UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 15-CR-20129-MOORE/Elfenbein

**UNITED STATES OF AMERICA**,

v.

**RICHARD A. PRICE**,

    Defendant.

_____/

## REPORT AND RECOMMENDATION ON SUPERVISED RELEASE VIOLATION

**THIS MATTER** came before the Court for a revocation hearing on September 3, 2024, upon a Superseding Petition for Warrant or Summons for Offender Under Supervision (the "Petition"), ECF No. [72], as to Defendant, Richard A. Price ("Defendant").[1]

### I. RELEVANT BACKGROUND

Defendant was convicted on July 24, 2015, of bank fraud, in violation of 18 U.S.C. § 1344, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), and was sentenced to 87 months' imprisonment followed by five years of supervised release. ECF No. [40]. He commenced supervision on July 21, 2021, and is scheduled to terminate supervision on July 20, 2026.

On August 12, 2022, the United States Probation Office submitted a Request for Modifying the Conditions or Term of Supervision with Consent of the Offender to the Honorable K. Michael Moore, recommending that the conditions of supervised release be modified to require the

---

[1] This matter was referred to the undersigned by the Honorable K Michael Moore, United States District Court Judge, to take all necessary and proper action as required by law with respect to any and all violations of Supervised Release as to Defendant, Richard A. Price. *See* ECF No. [65].

1

Defendant to contribute $75 monthly toward restitution, which the Court adopted. *See* ECF No. [58]. Thereafter, on March 23, 2023, the Court issued a Warrant for Defendant based on a Petition from the United States Probation Office, alleging that Defendant violated the requirements of supervised release. *See* ECF No. [59]. On May 31, 2024, Defendant appeared before the Court for his initial appearance on the Petition, and the Federal Defender was appointed to represent him. *See* ECF No. [64]. On June 25, 2024, the United States Probation Office submitted a Superseding Petition, ECF No. [72], which is the operative petition. After holding status conferences with the Parties, *see* ECF Nos. [70] and [74], the undersigned conducted a revocation hearing, which is discussed in detail below. *See* ECF No. [75].

    The violations alleged in the Superseding Petition are as follows:

1. **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or around March 1, 2023, in Palm Beach County, Florida, the defendant committed the offense of Felony Battery-Domestic Battery by Strangulation, a felony, contrary to Florida Statute 784.041(2A).

2. **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or around March 1, 2023, in Palm Beach County, Florida, the defendant committed the offense of Battery Domestic, a misdemeanor, contrary to Florida Statute 784.03(1A1).

3. **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or around March 1, 2023, in Palm Beach County, Florida, the defendant committed the offense of Battery Domestic, a misdemeanor, contrary to Florida Statute 784.03(1A1).

4. **Violation of Mandatory Condition**, by failing to satisfy the court-ordered restitution. On July 23, 2015, restitution in the amount of $126,139.07 was ordered by the Court and the defendant has failed to satisfy this financial obligation as ordered.

5. **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about May 30, 2024, in Palm Beach County, Florida, the defendant did commit the offense of Possession of a Firearm by a Convicted Felon, contrary to Florida Statute 790.23.

6. **Violation of Mandatory Condition**, by possessing a firearm as defined in 18

U.S.C. § 921. On May 30, 2024, the defendant possessed a Canik 9mm model TP9 ELITE-8, Serial Number T8472-17 BG06273, as evidenced by confiscation of said firearm by the Palm Beach County Sheriff's Office.

7. **<u>Violation of Standard Condition</u>**, by failing to notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer. On or about March 1, 2023, the defendant was arrested by the Riviera Beach Police Department, and he failed to advise the U.S. Probation Officer

ECF No. [72] at 2.

## II. REVOCATION HEARING

All parties, including counsel for the United States, United States Probation Officer Adrian Lieber, Defendant, and Defendant's counsel, appeared at the hearing prepared to proceed. At the start of the hearing, Defendant indicated his intention to admit to Violations 4 and 7 as alleged in the Superseding Petition and the Government announced its intention to dismiss Violations 1 through 3 at sentencing. *See* ECF No. [75]. Regarding Violations 5 and 6, the Parties announced they were ready to proceed with an evidentiary hearing as discussed below.

### A. Violations 1 through 4 and 7

The undersigned thereafter placed Defendant under oath and questioned him, following which the undersigned determined that Defendant is fully competent and capable of making an informed decision and that his admission to Violations 4 and 7 in the Superseding Petition is knowing and voluntary. The undersigned advised Defendant the maximum penalty the District Judge may impose for Violations 4 and 7, pursuant to 18 U.S.C. § 3583(e)(3), is a term of up to two years' imprisonment and up to two years of supervised release. Defendant acknowledged that he understands the maximum penalties. Accordingly, based on the representations on the record from Defendant, Defendant's counsel, the Government, and the United States Probation Officer, and having had the opportunity to observe and hear directly from Defendant, the undersigned recommends that the Court set the matter for a final hearing and accept Defendant's admission of

guilt as to Violations 4 and 7 as charged in the Superseding Petition, ECF No. [72] and dismiss Violations 1 through 3 at sentencing.

### B. Violations 5 and 6

The Court then held an evidentiary hearing on Violations 5 and 6 of the Superseding Petition. The Government presented the testimony of Deputy Zachary Legato and Deputy Katherine Nelson but did not present any exhibits. Defendant presented the testimony of Mary Price and thereafter supplemented the record, without objection from the Government, with an exhibit, consisting of a receipt for the purchase of the firearm recovered from Defendant's vehicle on May 30, 2024, *see* ECF No. [77-1].

#### 1. Deputy Zachary Legato

The Government called Zachary Legato, a Deputy Sheriff for the Palm Beach Sheriff's Office, who testified that he was on road patrol in the Loxahatchee area on May 30, 2024. During his patrol, shortly after midnight, he conducted a traffic stop after observing a white Jeep speeding on Southern Boulevard. The license plate area had a tinted tag cover but did not have a license plate. In a typical scenario, Deputy Legato testified he would run the license plate to determine the registered owner of the vehicle, but he could not do that in this instance, so he approached the driver-side window at which time he determined there was one occupant, the Defendant. He explained that the Defendant would only put the window down one inch, refusing to put the window down all the way. At this time, Deputy Legato asked for Defendant's driver license, registration, and insurance, but Defendant instead provided his United States passport, which identified him as Richard A. Price. During this interaction, Defendant made statements that sounded like a sovereign-citizen-type of claim.[2] Defendant, who Deputy Legato identified in

---

[2] An individual claiming a sovereign-citizen strategy "claims that a federal court has no jurisdiction to try him for the federal crimes with which he is charged," typically relying on "the Uniform Commercial Code

4

Court as the same individual involved in the traffic stop, offered him a binder of paperwork, but Deputy Legato did not accept the binder as it did not have the needed documentation. Deputy Legato then returned to his vehicle to check whether Defendant had a valid driver's license, and, at that time, he learned that Defendant did not have a license and that the Government had an arrest warrant for him. Because Defendant had a violent criminal history, Deputy Legato called for back up and 10 officers later arrived with a canine officer and a helicopter.

During the stop, another deputy and a lieutenant approached the vehicle and spoke with Defendant in an effort to have him exit the vehicle. He estimated this took about three to five minutes, and Defendant was then taken into custody. Deputy Katherine Nelson thereafter arrived on scene, performed an inventory search of the vehicle, and secured a tow truck. Deputy Legato eventually wrote a citation, but he was uncertain as to whether it was for driving without a license or driving with a suspended license. On cross-examination, Deputy Legato agreed that the car was not stolen, that he determined it was registered to Mary Price (Defendant's mother), and that he did not speak with her or otherwise attempt to contact Ms. Price that evening.

### 2. Deputy Katherine Nelson

Deputy Katherine Nelson, also employed with the Palm Beach County Sheriff's Office, testified that she arrived on scene on May 30, 2024 at approximately 1:18 a.m. She performed the inventory search of the vehicle and explained that she checks the vehicle for contraband or large expensive items that need to be logged and inventoried. She testified that she searched the white Jeep, searching the driver's area and center console, which is where she located a pistol enclosed

---

('UCC'), admiralty laws, and other commercial statutes to argue that, because he has made no contract with the Court or the prosecutor, neither entity can foist any agreement upon him." *United States v. Perkins,* No. 10-CR-97-1-JEC-LTW, 2013 WL 3820716, *1 (N.D. Ga. July 23, 2013). Courts "have summarily rejected the[se] legal theories as frivolous." *United States v. Sterling*, 738 F.3d 228, 231 n.1 (11th Cir. 2013).

in a black, soft case with a cloth strap. The pistol was a 9-millimeter Canik TP 9 model. She removed it from the vehicle, gathered an evidentiary gun box, and rendered the gun safe at which point she found a bullet in the chamber and determined it was an operable firearm. She also found a pocketknife on the cushion of the driver seat. No other items were removed from the vehicle and placed into inventory.

On cross-examination, Deputy Nelson testified that she entered the vehicle from the driver-side door and could not see the firearm when she opened the door. The firearm was located inside the center console, which was covered and latched closed at the time of the search. There was nothing else in the console. She admitted that she could not see the firearm until after she opened the console compartment. Although she was wearing her body-worn camera and it was operable at the time of the search, the Government did not introduce body-worn camera footage of the search. And, although DNA is automatically requested in every case, to her knowledge, no forensic tests were performed on this firearm. Deputy Nelson testified that she did not speak with the owner of the vehicle either.

### 3. Mary Price

Defendant called Mary Price as a witness. She testified that she is Defendant's mother and the owner of the white Jeep. She allows Defendant and other family members to drive her vehicle. In particular, she testified that her grandson, Anthony, uses the vehicle and that he visits her home regularly and uses the vehicle occasionally. Her grandson, Anthony, is a corrections officer who lives and works in Ocala, Florida. She explained that Memorial Day weekend was a gathering time for her family and her grandson had visited them that weekend and used the vehicle. She also testified that she was told the firearm belongs to Anthony.[3]

---

[3] The Rules of Evidence do not apply in revocation proceedings. *See* Fed. R. Evid. 1101(d)(3).

On cross-examination, she testified that her car has a license plate in her name and that she did not remove the license plate at any point. She also agreed that the Defendant uses her car often and that he lives in her residence with her while her grandson, Anthony, does not live with her. Ms. Price also explained that her grandson has visited them seven to eight times so far this year and usually arrives in different cars. She did not ask her grandson any questions regarding the ownership of those cars.

### 4. The Receipt for the Firearm

After the hearing, the Defendant supplemented the record, without objection from the Government, by providing the receipt for the firearm at issue. The receipt reveals that, on March 30, 2019, Anthony Rashard Price with an address in Ocala, Florida purchased a Canik firearm Model TP9-SF Elite with serial number 17BG06273 for $507.85 from Jerry's Pawn Shop also located in Ocala, Florida. *See* ECF No. [77-1].

## III. ANALYSIS

In probation revocation hearings, a court must only find that a defendant violated a condition of his supervised release by a preponderance of the evidence, rather than beyond a reasonable doubt. 18 U.S.C. § 3583(e)(3); *see also Johnson v. United States*, 529 U.S. 694, 700 (2000) (noting that, even though such violations can lead to imprisonment, the violation need not be criminal). Based on the above testimony and evidence and the standard to be applied, the undersigned finds that Defendant did not commit Violations 5 and 6 for the reasons explained below.

Violation 5 alleges that the Defendant failed to refrain from violating the law because, "on or about May 30, 2024, in Palm Beach County, Florida, the defendant did commit the offense of Possession of a Firearm by a Convicted Felon, contrary to Florida Statute § 790.23." *See* ECF No.

[72]. Section 790.23 of the Florida Statutes provides, in pertinent part:

> (1) It is unlawful for any person to own or to have in his or her care, custody, possession, or control any firearm, ammunition, or electric weapon or device, or to carry a concealed weapon, including a tear gas gun or chemical weapon or device, if that person has been:
>
> . . .
>
> (c) Convicted of or found to have committed a crime against the United States which is designated as a felony.

Fla. Stat. § 790.23 (2024).

According to the Florida Standard Jury Instructions for Criminal Cases, this offense has two elements:

1. The defendant had been convicted of a felony and
2. After the conviction, the defendant knowingly
   a. owned or had in [his] [her] care, custody, possession, or control [a firearm] [an electric weapon or device] [ammunition] or
   b. carried a concealed weapon.

Florida Standard Jury Instructions for Criminal Cases, 10.15.

During closing arguments, the Parties agreed that the central issue in this case is whether Defendant possessed the firearm. There is no dispute that the Defendant is a convicted felon as he was previously convicted in this case of bank fraud, in violation of 18 U.S.C. § 1344, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); both are felonies. *See* ECF No. [40]. And, according to his Presentence Investigation Report, he has a 1993 conviction for attempted murder in the second degree with great bodily injury, robbery of an inhabited dwelling, kidnapping, and evading a police officer and a 2003 conviction for burglary in the second degree and making false financial statements. *See* ECF No. [34] at ¶¶26-27.

Regarding possession, the Government argued that Defendant appears to be the one who uses the vehicle based on the lack of a license plate, indications Defendant gave to Deputy Legato consistent with claims of being a sovereign citizen, and Ms. Price's testimony that he uses the vehicle often. The Government also argued that Defendant's unwillingness to engage with law enforcement and refusing to put his window down are evidence that he knew the firearm was in the vehicle. The Government also asked the Court to discredit Ms. Price's testimony that the firearm belonged to her grandson Anthony as her statement was based on hearsay and Anthony lives many hours away in Ocala.

Defendant, in turn, argued that there is no evidence that the Canik was, in fact, a firearm. Regarding his interaction with law enforcement, Defendant expressed sovereign citizen ideas that suggest he would be cautious with his interactions with law enforcement because he believes he is not required to have a driver's license. Defendant also pointed out that the Government did not present body-worn camera footage that would have allowed the Court to observe what Deputy Nelson saw during her inventory search, and the Government failed to present any forensic evidence involving the firearm even though the firearms are routinely processed for forensic testing. As for the location of the firearm, Defendant pointed out that the firearm was inside a closed, latched console in the center of the vehicle and that, by Deputy Nelson's admission, the firearm could not be seen when she opened the driver-side door and could only be seen after opening the center console, which is unlikely to happen unless one seeks to put something away there. Further, Defendant argued that other family members use the vehicle, including Anthony, who worked for the Department of Corrections and was the owner of the firearm. In support of his position that Defendant did not possess the firearm, he asked the Court to follow the possession instruction from the Florida Standard Jury Instructions in Criminal Cases, which states, in pertinent

part that to prove possession of a firearm, there must be evidence that the defendant (1) "knew of the existence of the [firearm]" and (2) "intentionally exercised control over it."  Florida Standard Jury Instructions for Criminal Cases, 10.15.

In this case, the undersigned finds that the Government has not satisfied its burden of proof to show by a preponderance of the evidence that the Defendant knew of the existence of the firearm and intentionally exercised control over it.  Although the Government argued that Ms. Price's testimony about the ownership of the firearm was not credible because it was based on hearsay and her grandson, Anthony, lives in Ocala, the Defendant corroborated Ms. Price's testimony by supplementing the record with the receipt for the purchase of the firearm.  Indeed, the receipt, bearing the same serial number, make, and model of the firearm located in the vehicle, indicates that Anthony Rashard Price, Ms. Price's grandson, lives in Ocala and purchased the firearm in Ocala in 2019.  The Court, therefore, credits Ms. Price's testimony that her grandson, who works for the Department of Corrections, owned the firearm at issue.

Further, Ms. Price testified that her grandson visited her often and that he has visited her seven to eight times so far this year, including during Memorial Day weekend.  It bears noting that Memorial Day was on May 27, 2024, and the Defendant's traffic stop and arrest occurred in the early morning hours of May 30, 2024, which is a mere two days after Memorial Day weekend.  Ms. Price also testified that other family members, including Anthony, used her vehicle regularly.  The timing of Anthony's visit, his undisputed ownership of the firearm, and the undisputed testimony that he also uses the vehicle when he visits weighs in favor of the Defendant.  In addition, Deputy Nelson testified that the firearm was not visible when opening the driver-side door.  It was inside the latched center console of the vehicle with nothing else inside the console, suggesting that the console was not used for storage of other objects and may not, therefore, be frequently

accessed. Defendant's mere physical proximity to the firearm without other evidence is not enough to prove possession. The Government did not present any forensic evidence, such as fingerprint or DNA evidence on the firearm, and Defendant did not make any statements to law enforcement suggesting he knew about the presence of the firearm in the vehicle. The Government's remaining argument is based on Defendant's odd behavior and interactions with law enforcement in that he did not want to lower his window to speak to Deputy Legato or immediately exit his vehicle to be arrested. But, as the Defendant points out, someone making sovereign-citizen-like claims, regardless of the legal validity of the claim, may not believe in the authority of law enforcement or the requirement to have a driver's license. The Court finds that the Defendant's mere regular use of a vehicle that others also used, without any other evidence, is insufficient to prove that he knew of the existence of the firearm in the center console or that he intentionally exercised control over it and is, therefore, insufficient to show possession of the firearm by a preponderance of the evidence.

Regarding Violation 6, which states that he violated a mandatory condition of supervised release by possessing a firearm (the Canik 9mm model TP9) as defined in 18 U.S.C. § 921, the Court also finds that the Government has failed to satisfy its burden for the same reasons discussed above. Even if the Court uses the definition of possession in the Eleventh Circuit Criminal Pattern Jury Instructions, S6, the outcome is the same as "actual possession" requires evidence that the defendant knowingly had direct physical control of the firearm and "constructive possession" requires evidence, in the absence of actual control, that the person "has both the power and the intention to take control over it later." Here, the undersigned finds there is insufficient evidence of Defendant's knowledge of the firearm in the center console and without such knowledge, the Government cannot show actual or constructive possession.

Thus, the undersigned concludes that the Government has failed to prove by a preponderance of the evidence that the Defendant committed Violations 5 and 6.

## IV.  CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court set the matter for a final sentencing hearing, dismiss Violations 1 through 3 of the Superseding Petition, ECF No. [72], accept Defendant's admission of guilt as to Violations 4 and 7 as charged in the Superseding Petition, ECF No. [72], and adopt the finding that Defendant did not violate his conditions of supervised release as alleged in Violations 5 and 6 of the Superseding Petition, ECF No. [72].

The parties will have **fourteen days (14)** from the date of service of this Report and Recommendation within which to file written objections, if any, for consideration by the United States District Judge. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida on October 10, 2024.

                                             **MARTY FULGUEIRA ELFENBEIN**
                                             **UNITED STATES MAGISTRATE JUDGE**

Copies to:
Hon. K. Michael Moore, U.S. District Judge
Counsel of Record